LOUIS YECK

*v.*

GEORGE W. CRUM.

*Filed at Springfield September 27, 1887.*

122   267
100a  3243

1. MISTAKE—*in conveyance of land, being other than the land sold— mortgagee of the grantee without notice.* Where a party owning five forty-acre tracts, lying in a line north and south, sold the north forty-acre tract, but by mistake in his deed conveyed the south forty-acre tract, having the same description as the tract sold, except being in another section, and the grantee mortgaged the tract so conveyed to him, and the grantor afterward filed his bill to set aside such mortgage as a cloud on the title of his south forty acres, it was *held,* that he was not entitled to the relief sought, without showing that the mortgagee took his mortgage with a knowledge of the grantor's rights, or under such circumstances as to put him upon inquiry in respect of such right.

2. SAME—*of notice to mortgagee—possession, whether sufficient notice— examination of record sufficient.* The owner of several forty-acre tracts of land, lying together, sold one of them, but by mistake conveyed another one of the tracts. The grantee took possession of the tract in fact sold, and the grantor continued in the possession of the tract conveyed. The grantee, in giving a mortgage, described the land as in his deed. Afterward he borrowed $1000 to take up this mortgage, and gave a similar mortgage to secure the same. He informed the second mortgagee that the land was that conveyed to him, and by him mortgaged to the first mortgagee. The second mortgagee examined the record, and found the legal title in such party, subject to the prior mortgage. The second mortgagee knew that the mortgagor

resided on one of the forty-acre tracts, and that his grantor resided on another, but was not acquainted with their location by their numbers, and had no actual notice of the mistake in the deed: *Held*, that the mortgagee, in examining the records, exercised all the care and made all the inquiry that could reasonably be expected of him, and that he should not lose his debt on account of the mistake in the original deed.

3. SAME—*third persons protected as against the mistake or fraud of another.* It is a fundamental doctrine of equity that where one of two persons must suffer by the fraud of a third person, the loss must fall upon him who, by his negligence or conduct, put it in the power of such third person to cause the injury. So when a party, by mistake in his deed, conveys a tract of his land not intended, and his grantee, in ignorance of such mistake, incumbers the land conveyed, and afterward the grantee conveys the tract he in fact bought, and the original grantor, in violation of an agreement with the mortgagee, makes a conveyance of the right tract, which inures to the benefit of the second purchaser, and takes back from his grantee a deed for the land actually conveyed, so that the mortgagee can not have his mortgage placed upon the proper tract, such grantor can not, in a court of equity, have the mortgage set aside as a cloud on his title, but must suffer the loss caused by his own conduct.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Cass county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. POLLARD & PHILLIPS, for the appellant.

Messrs. KETCHAM & GRIDLEY, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

George W. Crum, appellee, was the owner of a farm of two hundred acres, in Cass county, Illinois, composed of five forty-acre tracts, lying north and south of each other, the north forty being the north-east quarter of the south-east quarter of section 26, and the south forty of the two hundred acres being the north-east quarter of the south-east quarter of section 35, all in township 17 north, range 11, west of the third principal meridian. It will be observed that the descriptions of the north and south forty-acre tracts are identical, except that one is in section 26 and the other in section 35. The dwelling

house, barn, orchard, etc., of the appellee were on the forty in section 35, which was occupied by him, as his homestead, at the time of the conveyance to George A. Crum.

On the 6th day of May, 1881, appellee bargained and sold to his cousin, George A. Crum, the north forty-acre tract,—*i. e.,* the north-east quarter of the south-east quarter of section 26,—for the sum of $2000, but by the mistake of the scrivener in preparing the deed, conveyed to said George A. the south forty-acre tract,—that is, the north-east quarter of the south-east quarter of section 35, instead of the north forty, as intended. The grantee, George A. Crum, went into possession of the forty on section 26, filing his deed for record May 9, 1881. No change of possession of the forty on section 35 occurred, appellee continuing in the occupancy thereof. On the 9th of May, 1881,—the same day of recording the deed of appellee to himself,—George A. Crum borrowed of William Epler $1000, and, to secure the payment thereof, executed a mortgage to Epler, on the north-east quarter of the south-east quarter of section 35, following the description in his deed from appellee. May 1, 1883, the money secured by the mortgage to Epler having become due, George A. Crum borrowed of appellant $1000, and with it took up and cancelled the Epler mortgage, and to secure appellant in this loan, executed and delivered to him a mortgage on the same tract of land,—that is, the north-east quarter of the south-east quarter of section 35, following the description in the deed from appellee and the mortgage to Epler. On the 10th day of August, 1883, George A. Crum, by his deed duly made, and recorded the same day, conveyed to Oswell Skiles the north forty-acre tract,—that is, the north-east quarter of the south-east quarter of section 26, being the tract purchased by him of appellee. About this time the mistake in the deed from appellee to said George A., and in the mortgages mentioned, was first discovered, and appellee and appellant at once called on said Geoge A., who promised "to straighten matters up" by paying appellant, ap-

pellant agreeing to release the mortgage on appellee's land when his debt was paid. George A. Crum neglected to pay appellant, and finally, when urged to do so, refused to pay or secure him, alleging, as a reason for such refusal, that his cousin, appellee, had mistreated him. Several meetings of the parties seem to have occurred, and considerable effort made to adjust the matter, without avail. During the negotiations respecting it, appellant requested appellee not to make or deliver a deed for the forty acres on section 26 until the debt due appellant was satisfied; and we think the weight of evidence clearly shows that appellee then agreed that he would comply with this request, and would not correct the mistake, but would retain the legal title until Yeck's debt was paid or secured. In November, 1883, appellee, without notifying appellant of his intention to do so, executed and delivered to George A. Crum a warranty deed, conveying to him the said north-east quarter of the south-east quarter of section 26, reciting that the deed was made for the purpose of correcting the mistake in the deed of May 6, 1881. On the 30th day of November, 1883, a deed dated November 7, 1883, from George A. Crum to appellee, was filed for record, conveying the north-east quarter of the south-east quarter of section 35 to appellee. George A. Crum was then, and still is, insolvent.

In the bill of appellee, in addition to the fact of the conveyance to George A., the mistake therein, the execution of the mortgage to Yeck, the relative location of the tracts of land, and the occupation of each, it was alleged, in substance, that appellant was well acquainted with appellee's farm, and knew that George A. Crum had, at the time of the execution of the mortgage to Yeck, no title to the land in the mortgage mentioned, but that the tract therein described was complainant's homestead. It is also alleged that appellant was negligent in not endeavoring to ascertain the fact, and took no other means of learning that his mortgage described the tract owned by said George A. than by comparison with the Epler mort-

gage. The answer of Yeck denies all knowledge that the premises mortgaged belonged to appellee, and sets up that he carefully examined the record, and found the title to the property mortgaged was in the said George A. Crum. These averments present the only question of fact really in dispute in the case.

That it was material for appellee to show that appellant took his mortgage with knowledge of the rights of appellee, or under such circumstances as would put him upon inquiry in respect of such right, is conceded. If it were not, it would require the citation of no authority to sustain the position, that without proof of such notice, or that which would amount to notice thereof, appellee would not be entitled to the relief sought. The only proof in the record which we have been able to find, aside from the presumption arising from the possession of the respective tracts, tending to sustain this view, is that of appellee, who says: "Speaking from my own knowledge, Yeck was aware of my possession of the forty on section 35, and of George A.'s possession of the forty on section 26, from and after the date of my deed to George A. Crum." On the other hand, appellant, after testifying to an examination of the record, says: "All the knowledge I have concerning the title of George A. Crum to the land, is what he told me at the time he wanted the $1000 from me. I asked him in what way he would secure me. He told me he would give me a mortgage on forty acres of land he bought from Doc. Crum, the complainant in this case. I asked him if there was any incumbrance on the forty. He said there was a mortgage of $1000, payable to William Epler, that became due May 12, and that he wanted to pay that off; that he would give me a lien on the same piece of land. He said that he had bought this same piece of land from Doc. Crum two years before. * * * At the time I took this note and mortgage, I had no personal knowledge as to the locality of this forty acres of land. I have a general knowledge of the neighborhood in

which this land is situated, and I felt satisfied that any forty acres in that neighborhood was good security for $1000.  * * * I had no knowledge of the description of the land as to where the complainant at that time lived,—that is, on what forty."

It may very well be that appellant knew where each of the Crums resided, without knowing or having his attention in any way called to the description of the tract upon which each lived.   This would very naturally be so, unless he had a very intimate knowledge of the land by its numbers, which is not shown.   We are not prepared to hold that the preponderance of the evidence in respect to this matter is with appellee. It is clearly shown that appellant, before taking the security, examined the record, and found that George A. Crum had a deed from George W. Crum, appellee, and apparently a good title to the land described in the mortgage.   We can find no sufficient evidence in this record upon which to base the presumption that he knew as a fact, when he took his mortgage, that it was upon the land of appellee, nor is there anything in the record, aside from the possession by appellee of the tract mortgaged, that would put a reasonable and prudent man upon inquiry as to the state of the title.   It may be conceded that appellant knew where appellee and George A. Crum, respectively, lived, and that when George A. Crum proposed to give him a mortgage on the land which he had bought of George W. Crum, and had mortgaged to Epler, and when he examined the records and found there a deed from George W. Crum to George A. Crum, and a mortgage from George A. to Epler, upon the forty-acre tract in section 35, he supposed that it was the land occupied by George A. Crum; but that would only prove that he was mistaken in the locality of the land he was getting the mortgage upon, and not in its description. The evidence does not disclose that he was told where the land was located or who was in possession of it.   Nor do we think that appellant was negligent in not making further inquiry.   He was told, simply, that he was to have a mortgage

on the land that had been mortgaged to Epler, and which had been conveyed by appellee to said George A. Crum. With this information he went to the record, and found the land mortgaged to Epler, and conveyed by appellee to George A., was the north-east quarter of the south-east quarter of section 35, and took his mortgage accordingly. He made all necessary examination and inquiry he was bound to make, and all, it seems to us, that any reasonable and prudent man would make under the circumstances, and there was nothing apparent to apprise him of any mistake in the description. If George A. Crum had claimed title through a source other than George W. Crum, then the possession of the latter might have been notice to appellant sufficient to have put him upon inquiry as to the rights of the said George W. Crum in the land. But under the facts in this case, such possession by the said George W., if known to the appellant, would put appellant on inquiry as to title claimed by the said George W., acquired by him after the date of his deed to George A. only, and it is not pretended there was any such title acquired. The mistake in this case was the result of negligence on the part of appellee, for which appellant is in nowise responsible. Appellee had it in his power to correct the mistake, so that no injustice would have been done.

It is apparent that Skiles, by the exercise of proper diligence, could, at the time of the discovery of the mistake, have protected himself from loss. But if he could not, it is apparent that, at the time of his purchase, if he had examined the record, it would have been disclosed to him that the title to the forty on section 26 was in appellee, and that George A. Crum had no title of record thereto, and could convey no title. The slightest inquiry or diligence on his part would have apprised him that it would be unsafe to purchase the forty on section 26 of the said George A., and rely upon any title the said George A. then had thereto. If, however, he chose to buy of said George A., relying on his possession and his equitable title, he would

18—122 ILL.

be held to take the title thus acquired, charged with all the equities to which it was subject in the hands of his grantor, one of which was the equitable right of appellant to attach his mortgage to the land. Upon a bill filed by either Skiles or said George A., to correct the mistake in the deed to said George A., they would have been compelled to do equity.

There are two familiar principles, either one of which, in the view we take of this case, is sufficient to preclude appellee from obtaining the relief sought by his bill. It is a fundamental doctrine of equity, that where one of two innocent persons must suffer by the fraud of a third person, the loss must fall upon him who, by his conduct, put it in the power of such third person to cause the injury. By his mistake in the first deed to George A. Crum, appellee vested in him the legal title, and put it in the power of said George A. to convey the legal title to the tract on section 35, and invested him with the muniment of title thereto, and by correcting that mistake after he had notice of appellant's mortgage, and equitable right of satisfaction thereof out of the forty on section 26, appellee put it in the power of George A. Crum to commit, and assisted him in consummating, an act by which either appellant or appellee must be the loser, and, according to the principle announced, the loss must fall upon appellee. When appellee discovered the mistake of his own making, he also discovered the equitable right of appellant, and had it in his power, and it was his duty, under his agreement with appellant, in correcting the mistake, to see that the rights of appellant were protected.

It requires no citation of authority to sustain the principle announced, or that other principle, also fundamental, that he who seeks equity must do equity, or to show the applicability of these principles to the facts of this case. Undoubtedly a court of equity would, upon proper bill filed by appellee, have corrected the mistake and transferred appellant's mortgage, and declared it to be a lien on the land in section 26, or, at

least, have decreed that appellee have a conveyance from George A. of the tract in section 35, and created a lien in favor of appellant upon said tract in section 26 for the amount of his mortgage. Appellee, however, chose to correct the mistake without protecting appellant and without notice to him, after his agreement that he would not make the corrections without the payment of appellant's mortgage, and upon which agreement he must have known appellant relied. Under such circumstances, we are of opinion that he has no standing in a court of conscience.

It may be said that appellant could have filed a bill and enforced his equitable rights, and because he did not do so he is guilty of *laches*, and must suffer the consequence. The answer to this is, that appellee expressly promised that he would hold the title to the land on section 26, and make no correction of his former deed until appellant's debt was satisfied. Upon this promise appellant had a right to, and evidently did, rely.

To affirm this judgment would be to cause appellant, who has acted, so far as we can see, in the most perfect good faith, and without negligence, unless it was in relying on the assurance and promise of appellee, to lose his security,—in the taking of which, as we have seen, he acted in good faith and with proper care,—and permit appellee to escape loss which has been caused by his own negligence in the first instance, followed by his own deliberate act of putting it in the power of George A. Crum to convey the tract on section 26 to innocent purchasers without notice of appellant's right. This would be most inequitable, and to it we can not yield our consent.

The judgment of the Appellate Court and the decree of the circuit court will therefore be reversed, and the cause remanded to the circuit court of Cass county, with instructions to render a decree dismissing complainant's bill.

*Judgment reversed.*